UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

LUECRETIA DAWN OWENS-EL A/K/A       *
LUECRETIA DAWN MCNAIR-BEY, *et al*.  *
                                    *
    Plaintiffs              *
                                    *
v.                                  *   CIVIL NO. L-10-3213
                                    *
LIEUTENANT KAPFHAMMER, *et al*.      *
                                    *
    Defendants              *
                                  *******

## MEMORANDUM

This is a civil rights case brought by Luecretia Dawn Owens-El ("Owens-El") and her son, Ché Quadaffi Williams-El ("Williams-El") (collectively, the "Plaintiffs"), against several officers of the Baltimore City Police Department. Proceeding pro se, the Plaintiffs allege that the officers entered Owens-El's apartment and arrested Williams-El without legal justification. The Plaintiffs have filed suit against Lieutenant Sean Kapfhammer ("Lt. Kapfhammer") and six subordinate officers (collectively, the "Officers"), who are named as John Does 1-6.

The Plaintiffs' pro se Complaint advances a host of state and federal claims. Now pending are two Motions to Dismiss filed by Lt. Kapfhammer. Def.'s Mot. to Dismiss, ECF No. 7; Def.'s Renewed Mot. to Dismiss, ECF No. 13. The Court has carefully reviewed the papers, and no hearing is deemed necessary.[1] See Local Rule 105.6 (D. Md. 2010).

A number of the Plaintiffs' claims are patently frivolous and will be summarily dismissed. Likewise, John Does 1-6 must be dismissed as parties because a claim cannot proceed against an unidentified person. All of the state law claims, both constitutional and

---

[1] Although Lt. Kapfhammer has moved for an extension of time to file his reply brief, the Court finds that no further briefing is necessary. Accordingly, that Motion (Docket No. 18) will be DENIED as MOOT.

common law, must be dismissed because the Plaintiffs failed to file a notice of claim as required by the Local Government Tort Claims Act.

Nevertheless, several of the Plaintiffs' federal claims against Lt. Kapfhammer, which are brought under 42 U.S.C. § 1983, are viable, and the Court will permit the parties to engage in discovery on these claims. Therefore, the Court will, by separate Order of even date, GRANT IN PART and DENY IN PART Lt. Kapfhammer's Motions.

**I.     Background**

What follows are the relevant facts alleged in the Complaint.[2] At the Motion to Dismiss stage, these facts must be taken as true. The accuracy of the allegations will be tested through discovery and a Motion for Summary Judgment.

On or about December 8, 2006,[3] six members of the Baltimore City Police Department, acting in concert with Lt. Kapfhammer, their supervisor, decided to enter Owen-El's apartment and arrest her son, Williams-El, without justification. Compl. 15. The Officers approached Owens-El's apartment, knocked and announced their presence, and displayed their badges. When Owens-El "crack[ed]" her door to respond, one Officer wedged his foot in the opening. Id. at 16-17. Another Officer claimed that the police were in "hot pursuit" of a suspect and ordered Owens-El to let them into her apartment. Id. at 17.

At this time, Owens-El's neighbor approached the Officers and stated that the suspect had just run past her apartment and "was on the roof." Id. at 17. Owens-El told the Officers that no

---

[2] The language in quotation marks is either quoted directly from the Complaint or paraphrased for clarity.
[3] According to Court records, Williams-El was charged with multiple crimes on December 8th, 2006, but the Complaint asserts that the events in question occurred "on or about December 9th, 2006." Compl. 15. The Court will assume that the events in question occurred on December 8, 2006.

individual had entered her home in over three hours, that her sons were relaxing in their bedrooms, and that she would not permit the police to enter her home. Id. at 17-18.

Two Officers then forced their way into Owens-El's apartment. Id. at 18-19. Once inside, one officer threw Owens-El against a wall, causing her to stumble over a bicycle. While she was on the floor, the same officer "stomped" on her shins. Owens-El alleges that she suffered injuries to her head, neck, left leg, and shins as a result of this incident. Id. at 19.

The Officers then proceeded to Williams-El's bedroom.[4] Id. at 18, 23. They "snatched" Williams-El out of his bedroom, "slammed" him to the floor, and arrested him. Id. at 15, 22-23. While the Officers were leaving the apartment, Owens-El asked Lt. Kapfhammer how she could report their alleged misconduct. Id. at 23. Lt. Kapfhammer told Owens-El to "call the police if you have a problem." Id. Owens-El claims that she called the police but that her complaint "fell on deaf ears" and was never pursued. Id. at 24. Owens-El does not allege that she ever lodged a formal complaint or otherwise complied with the required procedures for suing a local government entity.

According to Court records provided by the Plaintiffs, Williams-El was charged with four drug offenses, including manufacturing and distributing narcotics. On February 8, 2007, all four charges were nolle prossed. Compl. Attachs. 1-4, ECF No. 2-1.

The Plaintiffs filed the instant suit in the Circuit Court for Baltimore City on December 2, 2009. Lt. Kapfhammer was served on October 13, 2010, and he timely removed the action to this Court.

---

[4] The narrative in the Complaint includes inconsistencies that must be explored during discovery. For example, the Complaint first asserts that Williams-El was "laying in the bed moaning in excruciating pain" when the Officers entered the apartment. Later, it alleges that Williams-El was "on the telephone and computer, waiting on his mother to get ready for work" when the Officers entered his room and took him into custody. These discrepancies do not affect the Motion to Dismiss analysis, however.

3

**II.    Discussion**

Owens-El and Williams-El bring the instant suit under several statutes, including 42 U.S.C. § 1983. The Court has liberally construed the Complaint, which is rambling and repetitive, to tease out the Plaintiffs' theories of recovery. See Estelle v. Gamble, 429 U.S. 97 (1976); cf. Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). The pending Motions takes issue with several aspects of the Complaint, and a number of the Plaintiffs' claims may be summarily dismissed. The Court will assess the remaining allegations to determine whether they state viable claims.

**A.    Standard of Review**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). While a pro se complaint must be liberally construed, it must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The Court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

**B.    Claims to be Summarily Dismissed**

The Plaintiffs state a host of claims that are patently frivolous or inapplicable. For instance, the Complaint alleges that the police acted unlawfully by quartering soldiers in Owens-El's apartment. Likewise, the Plaintiffs seek to recover damages for alleged instances of perjury committed by the Defendants. These claims will be dismissed without comment. Any claim not specifically addressed herein is dismissed as frivolous or inapposite.

Because the John Doe Officers have been dismissed, the Court also must dismiss the civil conspiracy and supervisory liability claims against Lt. Kapfhammer. A civil conspiracy claim requires a plaintiff to prove, among other things, a meeting of the minds between two or more persons to achieve an unlawful objective.[5] Likewise, a supervisory liability claims requires a plaintiff to prove that a supervisory had knowledge of his underlings' misconduct.[6] Here, these claims must be dismissed because a factfinder cannot assess Lt. Kapfhammer's conduct in these areas without discovery from the unnamed Officers.

Finally, the Court must dismiss all state law claims because the Plaintiffs failed to file a "Notice of Claim" as required by Maryland's Local Government Tort Claims Act (the "LGTCA"). The LGTCA provides that "[a]n action . . . may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code. Ann. Cts. & Jud. Proc. § 5-304(c)(3) (2008).[7] Dismissal is appropriate because this omission deprived the City of an opportunity to "conduct [its] own investigation into the relevant facts, while evidence and the recollection of witnesses [were] still fresh." Smith v. Danielczyk, 400 Md. 98, 112 (2007).

---

[5] The complete elements are that the defendants (i) acted jointly in concert and (ii) performed an overt act (iii) in furtherance of the conspiracy that (iv) resulted in the deprivation of a constitutional right. Harrison v. Prince William County Police Dept., 640 F. Supp. 2d 688, 706-07 (E.D. Va. 2009) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)).

[6] The elements of a supervisory liability claim are: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) that there was an 'affirmative causal link' between the supervisors inaction and the particular constitutional injury suffered." Shaw v. Stroud, 13 F. 3d 791, 798 (4th Cir. 1994).

[7] "The LGTCA covers municipalities and counties and . . . applies to all torts without distinction, including intentional and constitutional torts." Thomas v. City of Annapolis, 113 Md. App. 440, 457 (1997). "[T]he notice is a condition precedent to the right to maintain [a] suit . . . ." Hargrove v. Mayor & City Council, 146 Md. App. 457, 462 (2002).

## C. Viable Claims

The Plaintiffs' remaining claims center on Lt. Kapfhammer and arise under § 1983.[8] For the reasons discussed below, each of these claims is viable at the Motion to Dismiss stage.

### 1. Warrantless Search

Generally, the Fourth Amendment of the United States Constitution requires law enforcement officers to obtain a warrant before searching a private dwelling. Officers may effect a warrantless entry under certain exigent circumstances. One of these exigencies occurs when officers are in "hot pursuit of a fleeing felon." United States v. Dart, 747 F.2d 263, 267 (4th Cir. 1984) (citing Warden v. Hayden, 387 U.S. 294 (1967)).

According to the Complaint, the Officers stated that they were in "hot pursuit" of a suspect. Nevertheless, Owens-El has alleged that this statement was a ruse designed by the Defendants to gain entry into her residence. Accordingly, further factual development is required to resolve this claim.

### 2. Excessive Force

The Plaintiffs allege that the Officers used excessive force while restraining Owens-El and arresting Williams-El.[9] Compl. 19, 20, 23. To establish an excessive force claim, a plaintiff

---

[8] As discussed above, the Plaintiffs also brought claims for violations of their state constitutional rights. Ordinarily, these claims would be analyzed in parallel. See, e.g., Mazuzv. Maryland, 442 F.3d 217, 231 (4th Cir. 2006). In this case, however, all state constitutional claims will be dismissed because of the Plaintiffs' failure to file the Notice of Claim.

[9] The Plaintiffs also allege violations of their Substantive Due Process and Eighth Amendment rights. Compl. 20, 21. The Plaintiffs' Substantive Due Process claims fall within the ambit of the Fourth Amendment Seizure Clause and the Fourteenth Amendment's procedural due process protections. These provisions, "not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the Plaintiffs] claims." Presley v. City of Charlottesville, 464 F.3d 480, 491 (4th Cir. 2006) (quoting Graham v. Connor, 490 U.S. 386).

The Plaintiffs' Eighth Amendment claim fails because no punishment was imposed on Williams-El. See Ingraham v. Wright, 430 U.S. 651, 667 (1977) (citing Powell v. Texas, 392

must allege that (i) police officers on the scene "seized" the plaintiff and (ii) that such seizure was objectively unreasonable. Graham v. Connor, 490 U.S. 386, 395-96 (1989).

Here, the Plaintiffs have alleged that the Officers forced their way into the apartment, threw Owens-El against a wall, causing her to fall to the ground, "stomped" on her shins while she was on the ground, and slammed Williams-El to the ground while arresting him. Compl. 19, 20, 23. This use of force, as described in the Complaint, would be unreasonable. See Graham v. Connor, 490 U.S. 386, 396-97 (1989). Accordingly, this claim must persist.

### 3. Unlawful Arrest and Malicious Prosecution

The Plaintiffs also allege that the officers arrested Williams-El without probable cause and subjected him to a malicious prosecution. To state a claim for an unlawful arrest, a plaintiff must allege (i) that the arrest constituted an unlawful deprivation of civil rights, and (ii) that the arrest was made without a warrant and without probable cause to believe that the plaintiff had committed a crime. Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968). Similarly, a malicious prosecution claim requires a plaintiff to prove (i) "an unreasonable seizure," and (ii) "a favorable termination of the criminal proceeding flowing from the seizure." Hays v. Town of Gauley Bridge, CIV.A. 2:09-1272, 2011 WL 1229797 (S.D.W. Va. Mar. 29, 2011) (citing Snider v. Seung Lee, 584 F.3d 193, 199 (4th Cir. 2009)).

Here, the Complaint asserts that no person had entered Owens-El's apartment in the three hours before the incident and that Williams-El remained in his bedroom during the chase and subsequent search. Compl. 18. Although Williams-El was charged with four crimes, the court records attached to the Complaint establish that they were nolle prossed. Accordingly, these claims likewise merit discovery.

---

U.S. 514 (1968) (plurality opinion) (stating that the Eight Amendment applies only to punishments imposed for violations of criminal statutes)).

### D. Lt. Kapfhammer Affidavit

Lt. Kapfhammer has attached an affidavit to his Motion to Dismiss. He affies that, (i) prior to the events at issue, he was advised that Williams-El was selling drugs; (ii) that he observed Williams-El evade an arrest; (iii) that he left the scene and returned after Williams-El had been arrested, and (iv) that he has never been in Owens-El's residence. Def. Aff. ¶ 2, 5, 7, 9, ECF No. 7-2.

Lt. Kapfhammer's affidavit is not germane for two reasons. First, the facts in the affidavit directly contradict the narrative in the Complaint. Second, Owens-El submitted an affidavit from her neighbor, Cynthia Jones. Jones affies that she told the Officers that the suspect they were pursuing never entered Owens-El's apartment.

Nevertheless, the Kapfhammer affidavit raises important factual issues that the parties must address at the summary judgment stage. When tested at summary judgment, the Plaintiffs' claims can survive only if they create a genuine dispute of material facts by rebutting Kapfhammers' contentions that he saw Williams-El evading arrest and that he never entered the Plaintiffs' residence.

### III. Conclusion

For the foregoing reasons, the Court will, by separate Order of even date, GRANT IN PART and DENY IN PART, Lt. Kapfhammer's Motions to Dismiss. The Court will also enter a separate Scheduling Order to govern discovery. If the Plaintiffs identify the John Doe defendants, they may file an Amended Complaint that seeks to assert claims against them. Likewise, the Plaintiffs could also move to reinstate their conspiracy and supervisory liability claims.

Dated this  13th  day of May, 2011.

                                          /s/
                                    Benson Everett Legg
                                    United States District Judge